By the Court.—Sedgwick, J.
The learned counsel for plaintiff takes the position that the partnership was not limited under the statute, because there was not a compliance with the terms of the 4th section (2 R. S., 764). That section requires that “ the persons desirous of forming such partnership shall make and severally sign a certificate, which shall contain among other things : ‘ 4th. The amount of capital which each special partner shall have contributed to the common stock.’ ” Section 5 requires that “ the certificate shall be acknowledged by the several persons signing the same,” “ and such acknowledgment shall be made and certified in the same manner as the acknowledgment of conveyances of land.”
In the present case the defendant paid in the amount to be contributed by him on March 11, 1874. The certificate required by the statute was then, it is to be presumed from the evidence, immediately handed in or delivered by some one, acting for all the partners, to some one authorized by all to place the same upon record, in accordance with the statute.
The certificate was dated March 9, 1874, and was signed on that day by T. F. Humphrey, one of the partners, at Albany, and on the same day he there acknowledged its execution by him before a notary, who made a proper certificate of that acknowledgment on the same day. T. F. Humphrey was not present in New York when the partnership was formed, and the special capital paid in; or when the certificate after all had signed it and acknowledged its execution, was delivered on March 11, for record. The inference is that T. F. Humphrey, after he made the acknowledgment, gave the paper to some person on March 9, to be handed in or delivered up after the actual payment of the special capital.
The objection made to this is that the certificate of the partners intended by the 4th section is one to be made after the special capital is paid in; that in the *192 present case, the certificate being made on March 9, was made before the capital was paid, and that for this reason the direction of the statute had not been observed.
If it were possible to confine the attention to the date of March 9, and to refrain from giving significance to what was done with the certificate on March 11, then certainly it would be necessary to say that the document as then made was not of the kind described by the statute. But, as matter of fact, the paper signed on March 9 in the form of a certificate was not, on that day, a certificate. A form of certificate not parted with by the person certifying, does not become his certificate until he parts with, or utters, it, to be used for the object for which the law calls for it. Before that, it is within his control, and may never be parted with. Before it is parted with, another paper may be prepared, if events require, and be made the certificate. It is argued that T. F. Humphrey did part and finally part, with the paper when he remained in Albany and sent the so-called certificate to be handed in, so far as he was concerned, as his certificate, and he made no other certificate. The facts do not sustain this position. It is true that he must have handed the paper to some other person. That person was his agent, and what the agent did he did, and when that agent parted with the paper on the 11th of March, at the time the special capital was paid in, he himself was the actor in a legal sense and then himself made the certificate, and then it was of the kind that the statute meant.
It maybe assumed that T. F. Humphrey did not know personally, at the time his agent parted with the certificate, that the special capital had been paid in as an actual occurrence. A requirement of a certificate does not imply that the party maldng it shall have an actual knowledge of the fact certified. He is bound only to the existence of that fact.
This result seems to be correct, if the effect of acknowledging the execution does not change it. The *193 word acknowledgment suggests to the mind in an obscure way an assertion of the truth of the statement of the paper. The statute does not countenance such a suggestion. It means a proceeding by which other persons may prove that the partners signed the certificate. The notary certifies, as to an acknowledgment of the signing, without reference to the truth of what is contained in the paper. The object of an acknowledgment is wholly met if that acknowledgment be certified before the capital is paid in, and as perfectly as after. The paper gives in itself the means of showing that the .partners did sign.
The objection that has been examined cannot be sustained.
There was an attempt on the trial to show, that the special partner did not contribute $100,000 as his special capital in good faith. The decision of the court below of this matter upon the testimony was correct.
A more difficult matter remains to be examined. It is necessary to apply to the case a construction of section 11 (2 R. S., 765). That section is: “Every renewal or continuance of such partnership beyond the time originally fixed for its duration shall be certified, acknowledged and recorded, and an affidavit of a general partner be made and filed and notice be given in the manner herein required for its original formation, and every such partnership which shall be otherwise renewed or continued shall be deemed a general partnership.”
This is not a penal statute, to be construed strictly. Its intention is to be found under the other rules of statutory construction. A limited partnership and its immunities for the special partner end with the term fixed originally, unless the 11th section is observed. This is a necessary implication from the sections that provide for an original formation. They require that the partners shall fix a term for the limited partnership. That means that beyond that term the limited partnership shall not continue its business. The 11th section *194 almost expressly declares that the duration of the original partnership shall be for the term first fixed, unless a renewal is competently effected by complying with the provisions of the section. A continuance of the business after the term first fixed would make the special partner a general partner, unless he secures an exemption from general liability, under section 11. And the facts are to be examined to ascertain if they show that he has secured that exemption.
A fundamental consideration relates to the object of the statute, or the purpose for which it was made. It would seem clear that it was meant that the manner of renewing the limited partnership should give to third persons the same kind of knowledge or notice, that it had been meant they should have as to the original partnership. There was the same kind of wrongs to be prevented, and in each case third persons needed the same kind of safeguards. A renewal or continuance of the business would involve the same kind of transactions and the same kind of relation to others. There is reason to think that like provisions of law would be made for each case, and no reason to think that unlike provisions would be made. Any other supposition would attribute to the law-makers incoherence and not harmony of intention. Of course, the statute expresses the means of accomplishing the design, and no other means can be exacted.
The section is elliptical in its sentences to an unusual extent. The renewal is to be certified, acknowledged and recorded, in the manner required for the original formation. But an original partnership is not to be certified, nor is it to be acknowledged, nor to be recorded, in any manner. A certificate is to be made which is to contain declarations that certain things have been done. It is not to declare that the limited partnership is made. This certificate and not the partnership is to be acknowledged, and it and not the partnership is to be recorded. The limited partnership comes into legal existence after *195 the documents have been made, filed and recorded. It is necessary then to say that in the case of an intended renewal there are to be a certificate, to be acknowledged and recorded, and an affidavit and a notice, as there are to be in an original formation.
This is not controverted. The controversy relates to the intention of the statute as to the contents of these documents.
It may be said preliminarily, if the statute meant that the substance of the different documents, taken together, should be merely an expression of a purpose to renew for a time, that the same substance could be given perfectly and completely in a single declaration to be acknowledged and filed with notice to be given. An affidavit as well as a certificate is required, and the presumption is that each was to have a bearing of its own, peculiar to itself, upon the legal result of a renewal being made.
If the design of section 11 is what has been already asserted, then the contents of the papers are to have the relations to the renewal, that like papers bear to an original formation. The certificate must state something as to the capital of the special partner, which will be carried over to the renewed firm. In the argument it was suggested that this special capital to be described in the new certificate, was such as had theretofore in the beginning been contributed. This, however, had been once certified, and the 11th section does not suppose that possibly a false certificate had been originally filed, leaving the partners all, from the beginning, generally liable. An affidavit is testimony, and in this instance to the contribution of special capital. There is the alternative of the affidavit for a renewal referring to the special capital of the first formation, or of the renewal. The former is not intended, for such an affidavit had been made already, and would have doubtful utility in case of the renewal. The latter is therefore *196 intended, and serves a purpose, specifically appropriate to a renewal.
The phrase, “ in the manner herein required for its original formation” is the controlling indication of what the statute requires to be the contents of the papers that have been named. They are to be made in the same manner as like papers were to be made in the original formation. And here the rule is to be applied that each part of the section is to be construed in reference to the subject matter of the whole section. The papers in their contents are to be fitted to a renewal.
What does “manner” mean? If it means “form” only, it must be said as to a certificate, as distinguished from the act of signing it, that the form in the original requirement was not particularized, but was a form of any shape, that would contain the assertion of the existence of certain facts and intentions. Every form of speech or of writing has inseparably connected with it its significance. The form of the certificate is to be such as will be sufficient to declare hi reference to a renewal, those things which are to be declared in reference to an original formation. This is shown in the case of the required affidavit. To observe the form of the original affidavit, it would be necessary only to use any form that would be sufficient as testimony to the contribution of capital. If an affidavit contained no allusion to that capital, it would not have the form required. The affidavit called for by the 11th section, is to be testimony as to the capital the renewed partnership will have.
But, the word “ manner ” has a larger meaning than “ form ” has. It includes “ mode, method or way,” and therefore includes the idea that the documents shall have the same function that was intended for an original formation.
Of course the documents are to be shaped to the contingencies of a renewal. The law deemed it important that third persons should know how much capital of the *197 special partner, was at the command of the partnership when it was first formed, it is equally important that persons dealing with the renewed partnership should know what amount of capital was to be at its command during its term.
It is not meant that the special partner should take his capital out of the old partnership and place it in the new. The certificate and affidavit are not to declare that any capital has been contributed afresh. They should state what capital belonging to the special partner remained in the old firm to be traded upon by the renewed firm. It is not necessary to suppose that it is generally the case, that the amount of special capital could be named with certainty as not liable to diminution, from the assets carried over to the new firm not yielding in the course of the business as much as at the end of the old partnership it was estimated they would yield. It would be possible to name the amount of the capital as it appeared, and as calculated in the usual business way, and to state that the amount was subject to the liquidation of the assets. If, however, it were impossible to make a statement on this subject that might always be justified, that would be a case where no renewal could be made properly under the statute. In that event no purpose of the law would be frustrated. It may be taken for granted that the statute favors caution and the avoidance of doubtful questions.
I take it, that practically the doubt as to the construction of the section comes from the difficulty of naming the amount of special capital there may be really in the business at the end of the first term. The difficulty will not exist in all cases. The difficulty may not amount to an impossibility. It is not doubtful that the statute may have some scope for its operation.
Finally, does the statute mean that, as part of the manner of renewal, the documents shall be true ? If it do not, then the implication is that the statute may be complied with by preserving forms which have in their *198 contents, untruths and declarations that must mislead. It seems to be clear that a part of the manner of forming an original partnership was by filing a true certificate and true affidavit. This is a deduction from all the sections that relate to an original formation. If some considered by themselves did not show this, yet if others did, it is sufficient. The 11th section calls for true certificates and affidavits.
The result is, that if the certificate or affidavit be false, the partnership is otherwise renewed or continued than in the manner required for an original formation.
To this it is objected that the words of the section mean as to the certificate that the fact of renewal and continuance are the only things to be certified. The endeavor has been to show in this opinion that the manner of certifying in the case of a renewal, being the same as of certifying in the case of an original formation, the same kind of certificate is intended by the 11th section as modified by the peculiarities of a renewal; and that a renewal is a legal consequence of filing the prescribed papers, and is not made by certifying that it is made. The same considerations are to be applied to the required affidavit.
There appears to be no doubt, that the time through which the business is to be continued should be stated. Yet the 11th section does not specifically call for this. It is only impliedly required, because the manner required for the formation called for a certificate as to the time.
It is further objected that “for a false statement in the renewal certificate or affidavit required by section 11, there is no penalty prescribed.” It has already beén said that the statute is not penal in any view. The last sentence of the 11th section provides what would have been the law if that provision had not been made. If a true certificate be required for a renewal, and be not made and filed, and the business is continued past the term of the legal existence of the limited part *199 nership, then the law ascertains the liabilities of the parties, by ascertaining whether the facts show a liability of a general partnership.
It is argued because in the case of an original formation, an action had been given for false statements by a separate section (sec. 8), from the sections which prescribed the method of formation, that section 11 gave no action, inasmuch as section 8 did not refer to renewals, and no other section gave an action for false statement in the instance of a renewal. The formal answer to this is that section 11 did not profess to give any action. It only described the sole, competent way of securing exemption from the legal liability that would exist, if its directions were not followed. In case of an original formation it might be argued without absurdity, that "the sections calling for the making and filing of the certificate, do not give an action for their falsity, for if they were meant to give this, section 8 would have been unnecessary. There is not a like ground for saying the same thing of section 11, for no section like section 8 refers to a renewal. This omission would be an argument that the security against false statements would be found in the effect that section 11 has in giving immunity only if its provisions are observed.
In reality, under the statute as to an original formation there may be an action against the special partner with the other partners as all general partners, without averring particular false statements; the action need not be on that section 8. Sharp v. Hutchinson, 100 N. Y. 533 was such an action. On the trial, the plaintiff offered the papers filed to form the limited partnership, and proposed to falsify them. They were excluded. The opinion in the court of appeals says: “ The view of the trial judge was, that the complaint instead of treating Hutchinson as a mere general partner, should have been based upon the statute, alleging the special defects in the formation of the limited partnership. In *200 this there was error. H the proof had been received, it would have shown, that Hutchinson never in fact became a special partner, but that he was from the beginning a general partner, and hable as such (2 R. S., ch. 4, tit. 1, § 8). The cause of action was not based upon the statute, but upon his common law hability as a general partner, and hence it was proper, in setting forth in the complaint the facts constituting plaintiff’s cause of action, to charge him as a general partner, and then upon the trial to show that he was such by any competent proof.”
It is further urged that because during the term of the original partnership, creditors had no means to investigate the affairs of the firm, to learn whether or riot the special capital had been impaired, it cannot be inferred that the 11th section intended that to make a renewal it should be necessary to disclose in the papers filed, the amount of special capital carried over from the first firm to the renewed partnership. The inability of creditors alluded to was contemplated to endure for the first fixed term, when at the beginning of that term the creditors were informed upon what capital the firm was to trade. If a like inability is meant to occur during the term of the renewal, it should have the basis of like information as to capital when the firm is renewed.
Another argument rests upon what is a fact, that the business of a renewal is in continuation without break of the former business, making altogether one business; and claims that the statute meant that if in the beginning the statutory form had béen followed, no subsequent conduct or misconduct, except as particularized in the statute, would make the special partner hable as a general partner.
It seems to me sufficient to say to this, that the controversy relates to the right there is to protract the original business, and to continue it without break; the immunity of the special partner continuing. By the statute the enjoyment of such a right is conditioned on com *201 pliance with the statute; and the question is, what has already been discussed, has the statute been observed ? In determining the construction of the section, it should be appreciated, that the unbroken continuance of the business was contemplated; that is one thing to be sub-served, in favor of those desiring to renew, but not at the expense of other requirements in favor of third persons, and especially when all the requirements harmonize.
The law of this case is found in the particular forms of words which have been chosen to constitute the statute. The earlier statute of 1822, and the provisions of the French law, may require less to be declared for a renewal than our statute requires. I am convinced that the 11th section has a meaning of its own, and that this meaning is controlling.
I am therefore of opinion that the plaintiff should have been allowed to offer testimony to show that the statements contained in the certificates and affidavits of renewals were false in the sense that it was not the fact “ that the said capital of the said special partner remains in said limited partnership wholly unimpaired.” My understanding of the meaning of the next assertion, “that the said amount, namely, $100,000,has been contributed by the said special partner to the common stock of the renewed partnership,” is, not that a new $100,000 had been contributed, but that the unimpaired capital of the special partner remaining in the old firm, was contributed to the renewed firm.
Judge Van Yoest, before leaving the bench, gave his concurrence in the views that have been expressed.
Plaintiff’s exception sustained, new trial ordered with costs to abide event.
Feeedman, J., concurred.